## UNITED STATES *v.* PETIT.[*]

### (*Circuit Court, E. D. Missouri.* March 29, 1882.)

CONSTITUTIONAL LAW—INFAMOUS CRIMES—CRIMINAL PRACTICE—BOND.

    Where the judges were divided in opinion as to whether or not the crime of passing a counterfeit half dollar was an infamous crime which could only be prosecuted by indictment, and certified a division of opinion on that point to the supreme court, in a case where said crime was attempted to be prosecuted by information, *held*, that the prisoner should be put under a bond of $1,000 to respond to any indictment that might be found against him at the next term of the district court, or the term succeeding, and that, under the circumstances of the case, a bond with one surety should be accepted.

    Information charging the defendant with passing a counterfeit half dollar. Plea to the jurisdiction on the ground that the crime of passing counterfeit coin cannot be prosecuted by information.

    *William H. Bliss,* for the United States.

    *Frank M. Estes,* for defendant.

    McCRARY, C. J., (*orally.*) In this case, which involves substantially the same question as the preceding case, and which is before the court upon a motion to quash an indictment, the court will certify a division of opinion in order that the question may go the supreme court of the United States. With regard to the question involved, it is of very much more importance than the case itself, and therefore I am not prepared to announce that I have reached a final and matured decision in opposition to that of the district judge. I am prepared to say that it is a case of so much importance that I think.

    [*]Reported by B. F. Rex, Esq., of the St. Louis bar.

it ought to go to the supreme court, and for that reason I will certify the case with the district judge, and will hold that the motion to quash the information must be sustained. I suppose that the case is of sufficient importance that the district attorney will, if he chooses, indict.

*Mr. Estes,* (counsel for defendant.) It is a plea to the jurisdiction. I suppose it has the same effect.

*Judge McCrary.* Yes, sir; the same thing.

*Mr. Bliss.* Yes, sir. I was proceeding with the indictment. I will state this: there are no cases to be brought before the grand jury, except this one, that I now recollect. It is a question to be considered whether the government shall be put to an expense of $5,000 or $6,000 in order to get one indictment. However, I shall consult with Judge Treat in regard to that.

*Judge McCrary.* Whatever course you shall pursue the court's action will be as indicated, and you can take such action as you see fit. We can fix such a moderate bond as the prisoner can give.

*Mr. Bliss.* If the prisoner only give a moderate bond he may not answer here when the supreme court passes upon his case.

*Mr. Estes* said that such remarks were unnecessary and uncalled for. He had offered to give bond and it was refused.

*Mr. Bliss.* Of course, what I shall say will not prejudice the prisoner. Our opinion of this prisoner's connection with other criminals is such that he will not return. I am willing to abide by any determination of the bond that the court may make. I will say that this man lived in close connection with a band of counterfeiters —with the Biebusch gang, with which the court is familiar. I think that the bond ought not to be reduced.

*Mr. Estes.* We had two hearings in this matter already—one before the commissioner and the other before Judge Treat. The district attorney speaks about his connection with a band of counterfeiters. There was no such evidence, except that he passed some counterfeit money on storekeepers in this city. He has been in court 10 months, and I think he is entitled to some consideration.

*Judge McCrary.* The question of bond I shall leave entirely to the district judge. He knows all about the matter; I know nothing.

*Judge Treat.* There have been very full discussions had in a number of the courts as to the meaning of that clause in the federal constitution, and it was very fully and elaborately argued before me and considered. I am still of the opinion, not in accord with a great many opinions delivered by other judges. The question can receive

no final determination until the supreme court of the United States passes upon it. There is presented to the court, for the purpose of securing a final determination of so important a matter, a certificate of division. In the mean time what is to become of the prisoner? In the ordinary course, it might not be reached in that court for four or five years. What shall be done with him in the intermediate time? Of course, it is in the power of the district attorney to proceed by indictment. There is something due, despite the gravity of the question, to the liberty of the accused. Now, it seems to me, it is fair enough to put this party under bond of $1,000, to respond to any indictment that may come at the coming term of the district court or the term succeeding; otherwise, the liberty of the citizen is to a large extent jeopardized in order that the courts may reach a conclusion as to the law. It should not be done with such a degree of expense, so to speak, on the part of the defendant. I think right and justice will be subserved by admitting the prisoner to bail. As brother McCrary has already said, the question is of more importance than the case. The question should be settled, and settled over the head, if you will, of the party defendant, and should not be settled with cruelty to him. The order will be that he give bond in the sum of $1,000, to appear to answer to any indictment that may be found at the May or November terms of the district court.

*Mr. Bliss.* Under the custom, this question can be advanced and heard on the first Monday in October.

*Judge Treat.* All the better. Making a bond that will carry you over the November term will carry you a year from the coming May, and in the mean time you can have it advanced and determined. That gives ample time, and enables this defendant to give bond.

*Mr. Estes.* I ask for information if I can give bond with one good bondsman?

*Judge Treat.* Under the circumstances of the case I will take it. I want some one as surety who will exercise his vigilance of the prisoner as bailor. He is under penalty of producing him on the bond. Bring that matter before me in chambers.

Later in the day the bond was procured and approved, and the prisoner was released.

NOTE. A crime is not infamous within the meaning of the fifth amendment unless it not only involves the charge of falsehood, but may also injuriously affect the public administration of justice by the introduction therein of falsehood and fraud. *U. S.* v. *Block,* 4 Sawy. 214; *U. S.* v. *Yates,* 6 FED. REP. 861. In early times the character of the crime was determined by the

punishment inflicted, but in modern times the act itself, its nature, purpose, and effect are looked at for the purpose of determining whether it is infamous or not. *U. S.* v. *Yates*, 6 FED. REP. 861. See *People* v. *Whipple*, 9 Cow. 708. In the absence of some positive provision in a statute, the presumption is against an intention to make an offence an infamous crime. *U. S.* v. *Cross*, 1 McAll. 149. The crime of passing counterfeit trade dollars is not an infamous crime. *U. S.* v. *Yates*, 6 FED. REP. 861.—[ED.